J-A02021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.A.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.H., MOTHER | : | No. 1256 MDA 2023 |

Appeal from the Decree Entered August 7, 2023
In the Court of Common Pleas of York County Orphans' Court at No(s):
2023-0099a

BEFORE:  NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                **FILED: MARCH 25, 2024**

Appellant, M.H. ("Mother") appeals from the decree entered in the York County Court of Common Pleas, which granted the petition of Appellee, York County Office of Children, Youth and Families ("CYF"), for involuntary termination of Mother's parental rights to her minor child, L.A.T. ("Child").  We affirm.

A prior panel of this Court set forth the relevant facts and procedural history of this case as follows:

> On March 17, 2022, six-week-old Child was admitted to the emergency room at Hershey Medical Center, where doctors discovered "a broken femur and rib fractures on both the right and left sides that were in various stages of healing." (Dependency Petition, filed 5/17/22, at 2).  Mother and C.T. ("Father") reported that they were the only caregivers for Child since his birth, they denied dropping Child, and they could not explain how Child sustained the injuries.  The responding caseworker noted, however, that Mother "was holding the child in an odd, non-comforting manner, *i.e.,* away from her body with both hands out in front of her."

(***Id.*** at 3). CYF subsequently received a child protective services referral alleging physical abuse.

CYF filed an application for emergency protective custody on May 13, 2022, which the court granted that same day. On May 17, 2022, CYF filed a dependency petition. Later, CYF filed a motion for finding of aggravated circumstances, arguing that Child suffered physical abuse resulting in serious bodily injury. The court adjudicated Child dependent on June 1, 2022. On October 20, 2022, the court found clear and convincing evidence to establish that aggravated circumstances existed as to Mother and Father.

Thereafter, the court received a parenting capacity assessment of Mother from Dr. Robert Gordon, M.Ed., a licensed psychologist. Dr. Gordon expressed concerns over Mother's difficulties with "setting and enforcing boundaries in her relationship with [Father]." (CYF Exhibit 1, submitted 11/30/22, at 15). Dr. Gordon also stated that "the caseworker strongly suspects that [Father] had engaged in domestic violence toward [Mother], yet [Mother] remained in the relationship." (***Id.***) Dr. Gordon observed: "If the child's father caused the injuries to the child, as suspected, there are some concerns that [Mother] was not able to protect the child and not able to ensure his safety." (***Id.*** at 14). Dr. Gordon concluded that Mother's "weaknesses in her parenting skills are in her ability to provide guidance and boundaries and in her ability to ensure the safety of the child." (***Id.*** at 16).

On March 9, 2023, Dr. Lisa Jannetta, Psy.D., a licensed psychologist, conducted a protective capacity assessment of Mother. Based upon this assessment, Dr. Jannetta expressed concerns with Mother's "history of protecting her son and taking action when there were threats to his safety." (CYF Exhibit 2, submitted 4/6/23, at 12). Dr. Jannetta also opined that Mother may not "comprehend the physical harm to her child and the dangers to his safety in her home." (***Id.*** at 13). Dr. Jannetta concluded that it is "questionable whether [Mother] is capable of effectively protecting [Child] without supervision." (***Id.*** at 14).

***Interest of L.T.***, No. 682 MDA 2023 at 1-3 (Pa.Super. filed Oct. 16, 2023)

(unpublished memorandum). On April 6, 2023, the court changed the permanency goal from reunification to adoption. This Court affirmed that order on October 16, 2023. *See id.*

Meanwhile, on May 31, 2023, CYF filed a petition seeking to involuntarily terminate Mother's parental rights. The court conducted a termination hearing on August 7, 2023. At the termination hearing, Amelia Linsao testified that Child has been in kinship placement at her residence since April of 2023. Child is happy, adjusting well, and has not suffered any significant injuries while in her care. Ms. Linsao stated that Child is not yet very verbal, but she believes that Child refers to her as mom. Child participates in a service called Infants and Toddlers, which provides occupational and physical therapy as needed. Child visits with Mother once a week for two hours and there have been no issues during transitions before or after the visit. Mother has not provided any direct financial support to Ms. Linsao or provided any gifts, cards, or letters to give to Child. Ms. Linsao also has not received any supplies such as diapers or wipes from Mother. Child has had one doctor's appointment while in Ms. Linsao's care and Mother did not participate in the appointment. Ms. Linsao stated that she did not know if Mother was aware of the appointment but noted that Mother had access to the provider portal, so the information was available to her. Ms. Linsao further confirmed that she was a pre-adoptive resource for Child.

Sarah White, a CYF caseworker, testified that she has been the caseworker assigned to Child's case since its inception. Due to the injuries

suffered by Child which prompted CYF involvement, the main goal for Mother's family service plan was to implement steps to ensure that Child would be safe in Mother's care. Mother has not engaged in dialectical behavioral therapy, which was recommended in her protective capacity evaluation. Otherwise, Mother has been generally compliant with the service plan. Nevertheless, Ms. White could not say that Mother made progress towards her goal because Mother has never identified the root cause of Child's injuries. Ms. White expressed concern that since the beginning of this case, Mother has always attempted to protect Father. Mother initially stated that Child's injuries were caused by a cat jumping on Child. Even after Father admitted that he could have caused Child's injuries while he was having a mental health episode, Mother continued to be in a relationship with Father for a few months. Mother stated to Child's prior foster parents that she would decide whether to remain in a relationship with Father based on the outcome of the criminal case against Father and the instant case.[1]

Mother eventually separated from Father, but it took significant pressure from the court and CYF for Mother to take that step. After they separated, Mother stated that she knew that she had not caused Child's injuries and acknowledged that the only other person who could have done it was Father. Nevertheless, to the date of the hearing, Mother had not identified how Child was injured or fully acknowledged that Child was injured because of Father's

_____

[1] At the time of the hearing, criminal charges were proceeding against Father in connection with Child's injuries.

actions. To Ms. White's knowledge, Mother had not offered to testify as a Commonwealth witness in the criminal case against Father. Ms. White believes that Mother knows additional information about Child's injuries that she has not shared. Additionally, Mother's protective capacity evaluation determined that there were continuing concerns about Mother's ability to protect Child from Father. Ms. White does not believe that additional services would help Mother address the issues that led to placement because Mother has been largely compliant with the service plan but has not made significant progress.

Mother has not progressed past supervised visitations with Child due to ongoing concerns that Mother is unable to protect Child from Father. Mother has consistently attended the supervised visits with Child. Mother has also consistently paid her child support payments but has not provided any direct financial support to Child's kinship homes. Mother has also never attempted to provide gifts, cards, or letters to Child through CYF. Ms. White is aware that Mother provided gifts and wipes to Child's prior kinship placement around Christmas. Ms. White is not aware of Mother providing any gifts, supplies, or additional support to Child's current kinship family.

Ms. White further testified that she has observed Child in his current placement and has not seen any cause for concern for Child's wellbeing. Child has not suffered any significant injures since he has been in placement. Additionally, Child is thriving in his current home and all his needs are being met. He is now meeting milestones that he had been delayed in previously.

Child is also well bonded with the kinship parents.

Mother testified that something had to have happened to cause Child's injuries, but she could not further elaborate because she did not observe how Child sustained his injuries. Mother acknowledged that she was made aware that Father told providers that Child may have been injured in his care. She remained with Father for months after learning this because of financial constraints. Mother testified that she was also confused whether CYF's goal was for Mother and Father to remain together and reunite Child with both parents. Upon further questioning from the court, Mother acknowledged that at every hearing in this matter the court informed her that she needed to separate from Father and become independent to make progress towards reuniting with Child.

Mother stated that she had regularly attended therapy since the inception of this case and has attempted to be fully compliant with the CYF service plan. Mother had also attempted to follow all the recommendations from the protective capacity and parenting capacity evaluations. Mother acknowledged that she did not seek out a dialectical behavioral therapist but worked on some dialectical therapy with her current therapist. Mother also acknowledged that she did not take steps to participate in a mother's group, as recommended in her protective capacity evaluation, because she believed that she could not participate in such groups without Child.

Mother stated that she had previously provided diapers and wipes for Child's care while Child was in his prior placement. Mother claimed she does

not have the direct contact information for Child's current kinship parents. She has inquired through relatives whether she could give anything to the kinship parents for Child and was told that Child did not need any more toys. Mother stated that she was not at Child's most recent medical appointment because she was unaware that it was rescheduled. Mother acknowledged that she has access to Child's medical portal and did not check it to see whether the appointment had been rescheduled. Mother testified that she has a strong bond with Child and Child still sometimes calls her "mom" or "mama".

The guardian *ad litem* ("GAL") opined that it is in Child's best interests to terminate Mother's parental rights so that Child could find permanency in his life. Child's legal counsel informed the court that Child does not have the language skills to communicate his preference. However, counsel has observed Child in his current placement and noted that Child is safe, happy, and well-cared for. Child's legal counsel further stated that he heard Child refer to Ms. Linsao as "mom" during their interactions. Based on his observations, Child's legal counsel recommended that Child's interests are best protected by terminating Mother's parental rights to Child.

At the conclusion of the hearing on August 7, 2023, the court terminated Mother's parental rights to Child.[2] On September 6, 2023, Mother timely filed a notice of appeal and a contemporaneous concise statement pursuant to Pa.R.A.P. 1925(a)(2)(i).

---

[2] Father signed a consent to adoption prior to the termination hearing and the court confirmed Father's consent to adoption on August 25, 2023.

Mother raises the following issue for our review:

> Whether the [trial] court erred … as a matter of law and/or abused its discretion as [CYF] failed to meet its burden to terminate Mother's parental rights.

(Mother's Brief at 5).

Mother argues that the record does not support the court's finding that the conditions that led to Child's removal continued to persist at the time of the termination hearing. Mother argues that she was making moderate progress on all goals set forth in the CYF family service plan and took steps to remediate all the concerns that led to Child's placement. Mother asserts that by the time of the termination hearing, she had separated from Father, obtained stable housing and employment, and regularly attended recommended therapy sessions. Mother claims there was no basis for CYF's assertion that Mother failed to identify the root cause of Child's injuries because Mother acknowledged that something must have happened to Child in Father's care to cause Child's injuries. Mother insists that she was not protecting Father but has always maintained that she did not see what happened to cause Child's injuries. Mother avers that she has consistently visited Child, made timely support payments, and maintained a strong bond with him. Mother concludes that the court abused its discretion in finding that termination of Mother's parental rights to Child was in Child's best interest, and this Court should vacate the termination decree. We disagree.

Appellate review of termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYF filed a petition for the involuntary termination of Mother's parental rights to Child on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*     \*     \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*     \*     \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*     \*     \*

(8)  The child has been removed from the care of the

> parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> \* \* \*
>
> **(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions."  ***In re Z.P., supra*** at 1117.

> Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of her…parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

The grounds for termination of parental rights under Section

- 11 -

2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. **_In re Z.P., supra_** at 1117. "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." **_Id._** at 1117-18. Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **_In Interest of Lilley_**, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." **_In re Z.P., supra_** at 1118.

Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of …his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

**_In re B., N.M._**, 856 A.2d 847, 855 (Pa.Super. 2004), _appeal denied_, 582 Pa.

- 12 -

718, 872 A.2d 1200 (2005) (internal citations omitted).

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of CYF supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of CYF' services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying

close attention to the effect on the child of permanently severing the bond."

*Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have … her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty

> requires that a parent exert [herself] to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of her… ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her… physical and emotional needs.

*In re B., N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of …her child is converted, upon the failure to fulfill …her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

Instantly, the record supports the court's decision to terminate Mother's parental rights to Child under Section 2511(a). Child was removed from Mother's care because Child had serious injuries that were in various stages of healing, indicating that Child had been seriously injured on multiple occasions. Upon learning this, Mother offered various implausible explanations for Child's injuries and continued to remain in a relationship with Father. Mother remained in a relationship with Father despite being told by the court and CYF that she needed to separate from Father to make progress towards reuniting with Child. Even after being informed that Father told

providers that he may have caused Child's injuries during a mental health episode, Mother stayed with Father for several months. Mother testified that she stayed with Father during this time because of financial constraints but the court noted that Mother did not seek other options such as shelters. Additionally, the court credited Ms. White's testimony that even though Mother separated from Father before the termination hearing, Mother had not fully come to terms with the root cause of Child's injuries. Although Mother vaguely acknowledged that something must have happened to Child while in Father's care, Mother's testimony and actions demonstrate that Mother has not fully acknowledged the fact that Child sustained multiple serious injuries due to Father's actions.

Ms. White further opined that additional services were not likely to help Mother address these issues in a reasonable timeframe because Mother has been largely compliant with the service plan for the duration of this case but has made minimal progress in her understanding of Child's safety needs. At the time that the termination petition was filed, Child had been removed from Mother's care for twelve months. In that time, Mother did not progress past supervised visits with Child due to her continued failure to put Child's safety needs above her relationship with Father. Additionally, Mother has largely failed to undertake any parental duties outside of her supervised visits. Mother did not provide direct financial support or supplies for Child's care to

Child's current kinship family.[3]  Mother also did not attend Child's last appointment even though she had access to Child's medical portal.  On this record, we discern no error in the court's conclusion that Mother's continual failure to remedy concerns for Child's safety left Child without essential parental care, and Mother is unable or unwilling to remedy the conditions that necessitated Child's removal in a reasonable period of time.  *See In re Z.P., supra*; *In re B., N.M., supra*; *In re A.R., supra*.  Thus, we agree that termination was proper under Section 2511(a)(2), (5), and (8).

With respect to Section 2511(b), the court acknowledged that there is a bond between Mother and Child.  Nevertheless, the court determined that Child's need for safety and permanency outweighs any potential harm that could result from terminating the fading bond between Mother and Child.  The record supports the court's conclusion.  Both the GAL and Child's legal counsel opined that termination of Mother's parental rights was in Child's best interest.  Ms. White and Child's legal counsel testified that they had observed Child interacting with his kinship family, and Child is safe, thriving and meeting milestones appropriately in the kinship family's care.  They further testified that Child is well bonded with his kinship family, and they have heard Child

---

[3] The court acknowledged Mother's testimony that she did not have the direct contact information for Child's current kinship family.  Nevertheless, the court noted that Mother had an affirmative duty to fulfill parental duties and Mother's passive acceptance of communication issues does not satisfy that duty.

refer to his kinship mother as "mom" during their interactions.  Therefore, we discern no error in the court's determination that termination is in Child's best interest under Section 2511(b).  **_See In re Adoption of C.D.R._**, 111 A.3d 1212 (Pa.Super. 2015) (affirming termination decision where court acknowledged that Mother and Child were bonded, but reasoned that termination would not be detrimental to Child and would serve Child's best interest and allow Child to find permanency with another family); **_In re N.A.M._**, 33 A.3d 95 (Pa.Super. 2011) (explaining mere existence of emotional bond does not preclude termination of parental rights).  Accordingly, we affirm the termination decree.

Decree affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/25/2024